RAY DIMMICK, Plaintiff, *v.* COLONIAL MOTOR COACH CORPORATION, Defendant.

EMMA DIMMICK, Plaintiff, *v.* COLONIAL MOTOR COACH CORPORATION, Defendant.

JUDSON DIMMICK, as Administrator of the Goods, Chattels and Credits of CECIL L. DIMMICK, Deceased, Plaintiff, *v.* RAY DIMMICK and COLONIAL MOTOR COACH CORPORATION, Defendant.

JUDSON DIMMICK, as Administrator of the Goods, Chattels and Credits of ETHEL DIMMICK, Deceased, Plaintiff, *v.* RAY DIMMICK and COLONIAL MOTOR COACH CORPORATION, Defendant.

JUDSON DIMMICK, as Administrator, and Another, Plaintiffs, *v.* COLONIAL MOTOR COACH CORPORATION and Another, Defendants.

Supreme Court, Monroe County, March 25, 1930.

*Warren, Shuster, Case & Halsey*, for Ray Dimmick and Emma Dimmick, as plaintiffs.

*Franklin & Franklin* [*Searl & McElroy* of counsel], for Judson Dimmick, administrator, etc.

*Pierson, Winchell & Cameron*, for the defendant Colonial Motor Coach Corporation.

*O'Brien & Emerson*, for Ray Dimmick, as defendant.

RODENBECK, J. The record made by the stenographer in this case does not disclose that juror Goodman misrepresented or concealed his relationship to Pierson, Winchell & Cameron or his connection with any negligence case. He stated that he knew Mr. Cameron and this should have presented a cue for further examination, which was not taken advantage of. The general question was asked by Mr. O'Brien and again by Mr. Halsey whether or not any juryman had been sued in a negligence case, but no answer appears on the record. Evidently one or more had been, but, so far as the record shows, juror Goodman may have responded in the affirmative. The record does not show that he was individually asked that question. He was not trying to conceal anything for he said he knew Mr. Cameron. He was, in fact, not a client of Pierson, Winchell & Cameron. They represented an insurance company which was defending an action for negligence in the City Court in which he was defendant. He had his own personal attorneys, MacFarlane & Harris, in that case. While he was, nominally, a defendant, the insurance company was so in fact. Too much stress is laid upon such connections in trials before juries. They understand, pretty generally, that nearly every party involved in a negligence case as defendant is insured and that the defendant has a merely nominal connection with the case. The record does not show that any substantial right has been interfered with and the case seems to have been fairly and impartially decided, which, in all jury cases, is the determining question. (*Stone* v. *O'Neil*, 93 Misc. 245; *Jones* v. *L'Ecluse*, 134 App. Div. 928; *Perry* v. *N. Y. C. & H. R. R. R. Co.*, 169 id. 83; *Jefson* v. *Crosstown Street Ry.*, 72 Misc. 103.) " There must be something more than an adverse verdict upon which to predicate misconduct." (*Stone* v. *O'Neil, supra*, p. 250.) " It is a serious matter to challenge the validity of a verdict upon a ground which attacks the integrity of a man participating in it." (Id. p. 247.) " A judgment should not be destroyed unless the alien influence is manifest." (*Jones* v.

*L'Ecluse, supra,* p. 928.) In *Fox* v. *Lindeman* (143 N. Y. Supp. 728, 729) the court said: " There is nothing in the record to suggest that the fourth juror knowingly made a false statement " or that the circumstances in that case " in any way influenced his mind in arriving at a verdict. The whole incident was not of sufficient importance to have any weight attached to it."

Motion denied.